IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| MONICA EDMONDS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| | ) | |
| DENIS MCDONOUGH, IN HIS OFFICIAL | ) | |
| CAPACITY AS SECRETARY OF | ) | |
| THE UNITED STATES, DEPARTMENT | ) | |
| OF VETERANS AFFAIRS, | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Monica Edmonds ("Plaintiff") and for her Complaint for Damages against Defendant Denis McDonough, Secretary of the United States, Department of Veterans Affairs ("Defendant"), and alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff was an employee of the Veterans Administration Eastern Kansas Healthcare System ("EKVA") in Leavenworth, Kansas at all times relevant to this complaint for damages.

2. Plaintiff is a citizen of the United States, residing in Olathe, Johnson County, Kansas.

3. At all times pertinent to this Complaint for Damages, Plaintiff had a disability as defined by the Americans with Disabilities Act of 1990 and amended in 2009, 42 U.S.C. § 12101 et seq. ("ADA").

4. Plaintiff was also an employee within the meaning of the ADA, having been employed by Defendant.

5. Defendant is the Secretary of the Department of Veterans Affairs of the United States. In that capacity, he is the Chief Executive Officer for the VA Eastern Kansas Healthcare System, which is a department within the Federal Government of the United States.

6. Defendant continuously operates the Dwight D. Eisenhower Department of Veterans Affairs Medical Center located at 4101 S. 4th Street Trafficway, Leavenworth, Kansas.

7. Defendant was at all times pertinent to this Complaint for Damages, an "employer" within the meaning of the ADA.

8. This Complaint is brought under the ADA, a federal statute.

9. Some, if not all, of the alleged unlawful practices took place in the State of Kansas, within the territory of the District of Kansas.

10. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391.

**Administrative Procedure and Procedural Posture**

11. On or about July 29, 2020, Plaintiff timely filed a formal Charge of Discrimination with VA's Equal Employment Opportunity Office ("EEOO"). Her charge identified "Disability" and reprisal as bases for her claims of discrimination, reprisal, and hostile work environment.

12. By letter on September 11, 2020, the EEOO accepted Plaintiff's claims for investigation.

13. On or about April 7, 2021, Plaintiff timely requested a Final Agency Determination ("FAD").

14. On or about November 19, 2021, Plaintiff received notice of the FAD and Right to File a Civil Lawsuit.

15. This suit is filed within 90 days of the issuance of the notice of the FAD and Right to File a Civil Lawsuit.

16. Plaintiff has fully complied with all administrative prerequisites before filing this action.

**General Allegations Common to All Counts**

17. Plaintiff is an employee of Defendant.

18. Plaintiff is employed as an RN-II with Defendant.

19. Plaintiff held this same position at the Eastern Kansas Health Care System in Leavenworth, Kansas from in or about September 2018 through in or about May 2020.

20. Plaintiff is a woman with a stage IV metastasizing breast cancer, which has spread to her skeleton.

21. Plaintiff is a member of the protected class of "disability."

22. Plaintiff was subjected to disparate treatment by her coworkers because of her disability during her employment at the EKVA in Leavenworth, Kansas.

23. Plaintiff's supervisors condoned the discrimination, harassment, hostile work environment, and reprisal against Plaintiff at the hands of her coworkers.

24. Plaintiff has also been subjected to reprisal, harassment, and a hostile work environment by her coworkers and supervisors for making complaints of discrimination and for insisting on compliance with federal law while working at EKVA.

25. In or about 2019 Plaintiff, who had previously transferred from the VA Medical Center in Poplar Bluff, Missouri, began implementing training and system changes as part of her job to bring the EKVA Telehealth Department into compliance with national VA standards known as the National Clinical Coding Guidance of 2017.

26. In or about October 2019 Plaintiff began to receive push-back from her coworkers in the form of questioning her knowledge and authority to implement the changes she had been tasked with making to bring the EKVA Telehealth Department into compliance with the national directives.

27. Plaintiff's coworkers also began attacking Plaintiff because of her disability, alleging she was unfit to perform her job because of her cancer and alleged she was impaired on the job, both of which were false.

28. Specifically, on or about October 2019 Plaintiff's coworker Elizabeth Fry questioned Plaintiff's pay grade and asked why Plaintiff should be the "leader of this group" when Plaintiff sought to implement workplace changes to bring EKVA into compliance with the national VA regulations and federal law.

29. Between October 2019 and November 2019 Elizabeth Fry told other employees in the coding department at EKVA that Plaintiff did not know what she is doing and to question what Plaintiff does.

30. Also between October 2019 and November 2019 Plaintiff's coworkers Elizabeth Fry, Allison Beebe, and Rayla Johnson sent derogatory emails about Plaintiff to Alyshia Leisure, Plaintiff's third level supervisor, and VISN Telehealth Managers, questioning what Plaintiff was doing in attempt to discredit Plaintiff.

31. The aforementioned group sent approximately 89 derogatory emails alleging Plaintiff was unfit to perform her job because of her disability and alleging Plaintiff was impaired while working, among other allegations of deficient performance, because of Plaintiff's disability, in reprisal for making complaints of their discrimination, and in reprisal for Plaintiff insisting on compliance with the VA's national coding standards.

32. Plaintiff reported the foregoing misconduct to her supervisor Kristi Crowder multiple times between October 2019 and January 2020.

33. Plaintiff's supervisor Krisit Crowder failed to respond to Plaintiff's complaints and did nothing about the discriminatory and retaliatory mistreatment.

34. Defendant thus condoned the misconduct of Plaintiffs' coworkers towards Plaintiff.

35. In or about November 2019 one of Plaintiff's coworkers told her to "shut up" in the middle of a teleconference training of 40 employees.

36. Upon information and belief, Plaintiff's coworker would not have told her to shut up in front of 40 employees but for Plaintiff's disability and in reprisal for Plaintiff's insistence on compliance with coding directives from the national VA and federal law, and in reprisal for Plaintiff's complaints of discrimination, harassment, and Plaintiff's complaints of her coworkers' failure to comply with the law.

37. In or about November 2019 Plaintiff discovered Elizabeth Fry was recording Plaintiff in meetings without Plaintiff's knowledge.

38. Upon information and belief, Elizabeth Fry did not record other non-disabled persons' conversations/meetings, and only recorded Plaintiff.

39. Plaintiff complained to her supervisor Kristi Crowder about Elizabeth Fry's conduct of recording Plaintiff for what Plaintiff believed was a sinister purpose, and asked Crowder to direct Fry to delete the recordings.

40. Crowder did nothing in response to Plaintiff's complaint.

41. In or about November 2019, after the Thanksgiving holiday, Kristi Crowder accused Plaintiff of being "shady" in an email alleging Plaintiff had failed to keep Crowder apprised of her whereabouts while Plaintiff was not on duty.

42. Upon information and belief, other non-disabled employees and employees who had not made complaints of discrimination were not required to notify Crowder of their whereabouts while off duty.

43. In or about December 2019 Allison Beebe sent emails complaining about Plaintiff alleging that Plaintiff's cancer was affecting her job performance, Plaintiff's ability to be a safe nurse, and further asked that Plaintiff be drug tested.

44. Beebe's allegations were untrue and were not raised by Beebe in good faith, but were made solely for the purpose of discrediting Plaintiff because of Plaintiff's disability and in reprisal for making complaints of discrimination.

45. Also in December 2019, Elizabeth Fry, Allison Beebe, Rayla Johnson, and Shanna Higgins all sent an email to Crowder alleging that Plaintiff was not doing her job and created a risk to her patients, all of which was untrue.

46. These allegations were also untrue and were not raised by Plaintiff's coworkers in good faith; they were made solely for the purpose of discrediting Plaintiff because of Plaintiff's disability and in reprisal for making complaints of discrimination.

47. Between December 2019 and March 2020 Elizabeth Fry, Allison Beebe, Rayla Johnson, and Shanna Higgins reported to Crowder that Plaintiff was impaired while on duty.

48. Also in or about December 2019, Plaintiff had been part of a private discussion with Fry, Beebe, Johnson, and Higgins, in which the foregoing women asked Plaintiff about her breast reconstruction.

49. Plaintiff had been open about her cancer and having had a double mastectomy in the past.

50. Fry, Beebe, Johnson, and Higgins approached Plaintiff under the auspices of concern and/or curiosity about Plaintiff's medical procedures.

51. One of the aforementioned women reported she had heard about a process for tattooing realistic looking nipples onto a reconstructed breast and asked whether Plaintiff had this done.

52. Plaintiff responded she had.

53. The other women then asked Plaintiff whether they could see her tattoos, indicating they were curious and interested in seeing them for professional and educational purposes.

54. Plaintiff showed the other women her tattoos in a private setting out of public view.

55. The other women then used this as an opportunity for further discrimination, harassment, and reprisal, and made a formal complaint about Plaintiff, alleging she had engaged in unprofessional and inappropriate behavior of a sexually harassing nature, which was untrue.

56. Following Plaintiff's making complaints of discrimination in the fall of 2019 she was excluded from departmental activities, blamed for many things happening within the Telehealth Department over which Plaintiff had no control, and shunned by her coworkers.

57. Plaintiff's coworkers discriminated against Plaintiff because of her disability, created a hostile work environment for Plaintiff because of her disability, and further discriminated against and created a hostile work environment for Plaintiff in reprisal for her making complaints of discrimination and for Plaintiff's insisting her coworkers comply with the law and national VA directives.

58. Plaintiff's supervisors did nothing about Plaintiff's complaints, failed to protect Plaintiff from illegal discrimination, harassment, and reprisal at the hands of her coworkers, and ratified the conduct of Plaintiff's coworkers against Plaintiff.

59. In or about May 2020 the work environment at EKVA had become so hostile that Plaintiff was forced to seek a transfer to another VA facility that was further away from her home than the EKVA, more than doubling Plaintiff's commute time and travel expenses.

60. Plaintiff has been damaged as a result of Defendant's actions and or failure to act.

## COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT - DISABILITY DISCRIMINATION

61. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing Paragraphs.

62. Plaintiff is a disabled person, and therefore a member of the protected class of "disability."

63. Plaintiff was subjected to disability discrimination and/or subjected to a hostile work environment at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted Plaintiff's coworkers to discriminate against and harass Plaintiff because of her disability.

64. Plaintiff reported the discriminatory practices to Defendant, and Defendant (through its agents, other employees, managers, and supervisors) made no genuine attempt to

remedy the situation and eventually took retaliatory action against Plaintiff for making complaints.

65. Defendant's discrimination against Plaintiff directly and materially affected a term, condition, or privilege of Plaintiff's employment in that she was subjected to a hostile work environment.

66. Defendant's discrimination and creation of a hostile work environment further materially affected a term, condition, or privilege of Plaintiff's employment when Plaintiff was forced to request a transfer to a new VA facility which was further away from her home, thereby doubling her travel time and expenses causing Plaintiff a financial loss.

67. By not taking action to stop or rectify the discriminatory treatment of Plaintiff, Defendant ratified, authorized and/or condoned the conduct of its agents and employees.

68. Defendant knew of the discrimination and failed to take appropriate action, or any remedial action whatsoever.

69. Plaintiff has been damaged as a result of Defendant's actions and/or inaction.

70. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of income, a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages; injunctive relief; compensatory damages; punitive damages; for reasonable attorney fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II – VIOLATION OF THE ADA – RETALIATION

71. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing Paragraphs.

72. Plaintiff engaged in protected activity by making complaints of disability discrimination and reprisal within the workplace.

73. Plaintiff was subjected to retaliation and/or subjected to a hostile work environment at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted Plaintiff's coworkers and supervisors to retaliate against her and harass her because she complained of their discrimination against her, and Defendant either refused or failed to stop the retaliation and harassment.

74. Plaintiff complained of the retaliatory conduct to Defendant multiple times, and Defendant (through its agents, other employees, managers, and supervisors) made no attempt to remedy the situation, but rather ignored Plaintiff's complaints and retaliated against Plaintiff for making complaints.

75. Plaintiff's complaints and protected activities were the reason the severe and pervasive discrimination, harassment, and retaliation occurred.

76. Defendant's retaliation against Plaintiff directly and materially affected a term, condition, or privilege of Plaintiff's employment because the conditions were continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

77. Defendant's retaliation and creation of a hostile work environment further materially affected a term, condition, or privilege of Plaintiff's employment when Plaintiff was forced to request a transfer to a new VA facility which was further away from her home, thereby doubling her travel time and expenses causing Plaintiff a financial loss.

78. By taking actions against Plaintiff in retaliation for her complaints and protected activity, and by not taking action to stop Plaintiff's coworkers from retaliating against and harassing Plaintiff, Defendant ratified, authorized and/or condoned the conduct of its agents and employees.

79. Defendant knew of the retaliation and failed to take appropriate action, or any remedial action whatsoever.

80. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

81. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of income, a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages; injunctive relief; compensatory damages; for reasonable attorney fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

LAW OFFICE OF MADELINE JOHNSON

/s/ *Madeline Johnson*

Mary Madeline Johnson, D. Kan. # 77985
220 Main Street, Suite 201
Platte City, Missouri 64079
Telephone: (816) 607-1836
Facsimile:  (816) 817-5507
Email: mmjohnsonlaw@gmail.com

ATTORNEY FOR PLAINTIFF

12